UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SASA TANASKOVIC,<br><br>       *Plaintiff,*<br><br>  -v.-<br><br>REALOGY HOLDINGS CORP., *et al.*,<br><br>       *Defendants*. | Civil Action No. 2:19-cv-15053-SRC-CLW<br><br><br><br>Motion Day: November 16, 2020 |

## REPLY MEMORANDUM OF LAW IN
## FURTHER SUPPORT OF DEFENDANTS' MOTION
## <u>TO DISMISS THE AMENDED CLASS ACTION COMPLAINT</u>

Susan L. Saltzstein (*pro hac vice*)
James W. Brown
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000
E-Mail:  susan.saltzstein@skadden.com
     james.brown@skadden.com

*Attorneys for Defendants*
 *Realogy Holdings Corp.,*
 *Richard A. Smith,*
 *Ryan M. Schneider,*
 *Anthony E. Hull, and*
 *Timothy B. Gustavson*

**TABLE OF CONTENTS**

**Page**

**TABLE OF AUTHORITIES**...........................................iii

PRELIMINARY STATEMENT..............................................1

ARGUMENT...........................................................2

I.   PLAINTIFF FAILS TO ALLEGE ANY ACTIONABLE MISSTATEMENT......2

     A.   No Statement Has Been Shown to be False When Made.....2
     B.   Most Challenged Statements Are Forward-Looking.......10
     C.   Many Statements Are Sincerely Held Opinions..........12
     D.   Many Statements Are Inactionable Puffery.............13

II.  THE COMPLAINT FAILS TO ALLEGE SCIENTER....................14

III. PLAINTIFF FAILS TO PLEAD LOSS CAUSATION...................18

IV.  THE COMMISSION SPLIT CLAIM IS TIME-BARRED.................19

V.   THE SECTION 20(A) CLAIM SHOULD BE DISMISSED...............20

VI.  THE REQUEST FOR LEAVE SHOULD BE DENIED...................20

CONCLUSION........................................................20

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*In re Advanta Corp. Securities Litigation ("In re Advanta Corp."),*
   180 F.3d 525 (3d Cir. 1999)...............................13

*In re Aetna, Inc. Securities Litigation ("In re Aetna, Inc."),*
   617 F.3d 272 (3d Cir. 2010)...............................14

*Amorosa v. AOL Time Warner Inc.,*
   409 F. App'x 412 (2d Cir. 2011)..........................19

*In re Aratana Therapeutics Inc. Securities Litigation ("In re Aratana Therapeutics Inc."),*
   315 F. Supp. 3d 737 (S.D.N.Y. 2018)......................13

*In re Bradley Pharmaceuticals, Inc. Securities Litigation ("In re Bradley Pharm., Inc."),*
   421 F. Supp. 2d 822 (D.N.J. 2006)....................15, 19

*In re Bristol-Myers Squibb Securities Litigation ("In re Bristol-Myers Squibb"),*
   No. 00-CV-1990 (SRC), 2005 WL 2007004 (D.N.J. Aug. 17, 2005)..........................................14

*California Public Employees' Retirement System v. Chubb Corp. ("CALPERS v. Chubb Corp."),*
   394 F.3d 126 (3d Cir. 2004)..............................4, 5

*Employees Retirement System of Puerto Rico Electric Power Authority v. Conduent Inc.,*
   No. 19-CV-8237 (SDW), 2020 WL 3026536 (D.N.J. June 5, 2020)...........................................14

*In re Enzymotec Securities Litigation ("In re Enzymotec"),*
   No. 14-CV-5556 (JLL), 2015 WL 8784065 (D.N.J. Dec. 15, 2016) .........................................17

*Epstein v. World Acceptance Corp.,* 203 F. Supp. 3d 655 (D.S.C. 2016) .........................................17

*Gamm v. Sanderson Farms, Inc.,*
   944 F.3d 455 (2d Cir. 2019)...............................8

iii

*Harris v. Ivax Corp.*,
    182 F.3d 799 (11th Cir. 1999)............................12

*In re Henry Schein, Inc. Securities Litigation ("In re*
    *Henry Schein, Inc."),*
    No. 18-CV-01428 (MKB), 2019 WL 8638851 (E.D.N.Y.
    Sept. 27, 2019)..........................................8

*In re Hertz Global Holdings Inc.*,
    905 F.3d 106 (3d Cir. 2018).....................2, 16, 18

*In re Hertz Global Holdings, Inc. Securities Litigation*
    *("In re Hertz Global Holdings, Inc."),*
    No. 13-CV-7050 (MCA), 2017 WL 1536223 (D.N.J.
    Apr. 27, 2017)..........................................10

*In re Incyte Shareholder Litigation ("In re Incyte"),*
    No. 13-CV-365 (JRS), 2014 WL 707207 (D. Del.
    Feb. 21, 2014).........................................2, 4

*Institutional Investors Group v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009).....................12, 16, 17

*In re Insurance Brokerage Antitrust Litigation ("In re*
    *Insurance Brokerage"),*
    618 F.3d 300 (3d Cir. 2010)..............................7

*In re Interpool, Inc. Securities Litigation ("In re*
    *Interpool, Inc."),*
    No. 04-CV-321 (SRC), 2005 WL 2000237 (D.N.J.
    Aug. 17, 2005)..........................................20

*Martin v. GNC Holdings, Inc.*,
    No. 15-CV-01522 (MRH), 2017 WL 3974002 (W.D. Pa.
    Sept. 8, 2017)..........................................18

*In re Merck & Co., Inc. Securities, Derivative & "ERISA"*
    *Litigation ("In re Merck & Co., Inc."),*
    No. 05-CV-1151 (SRC), 2011 WL 3444199 (D.N.J.
    Aug. 8, 2011).........................................5, 6

*Moehrl v. National Association of Realtors*,
    No. 19-CV-01610, 2020 WL 5878016 (N.D. Ill.
    Oct. 2, 2020)...........................................8

*National Junior Baseball League v. Pharmanet Development*
    *Group*,
    720 F. Supp. 2d 517 (D.N.J. 2010)..............2, 10, 11, 18

*In re Navient Corp. Securities Litigation ("In re Navient Corp.")*,
No. 17-CV-8373 (RBK), 2019 WL 7288881 (D.N.J. Dec. 30, 2019)..........................................15

*Oklahoma Firefighters Pension & Retirement System v. Lexmark International, Inc.*,
367 F. Supp. 3d 16 (S.D.N.Y. 2019).........................15

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
575 U.S. 175 (2015).........................................12

*Oran v. Stafford*,
226 F.3d 275 (3d Cir. 2000)................................9

*Steiner v. MedQuist Inc.*, No. 04-CV-5487 (JBS),
2006 WL 2827740 (D.N.J. Sept. 29, 2006) ..................8

*Teamsters Local 456 Pension Fund v. Universal Health Services*,
396 F. Supp. 3d 413 (E.D. Pa. 2019)......................17

*In re Travelzoo Inc. Securities Litigation ("In re Travelzoo Inc.")*,
Nos. 11-CV-5531 (GBD), 2013 WL 1287342 (S.D.N.Y. Mar. 29, 2013)..................................................5

*In re Urban Outfitters, Inc. Securities Litigation ("In re Urban Outfitters, Inc.")*,
103 F. Supp. 3d 635 (E.D. Pa. 2015)......................19

*Utesch v. Lannett Co.*,
385 F. Supp. 3d 408 (E.D. Pa. 2019)......................17

*In re Valeant Pharmaceuticals International, Inc. Securities Litigation*,
No. 15-CV-7658 (MAS), 2017 WL 1658822 (D.N.J. Apr. 28, 2017)...............................................6

*In re ViroPharma Inc. Securities Litigation ("In re ViroPharma Inc.")*,
21 F. Supp. 3d 458 (E.D. Pa. 2014)......................15

*In re Vivendi Universal, S.A. Securities Litigation ("In re Vivendi Universal, S.A.")*,
765 F. Supp. 2d 512 (S.D.N.Y. 2011)......................14

*West Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
     No. 13-CV-6731, 2015 WL 3755218 (E.D. Pa.
     June 16,2015) ...........................................5

*Yellowdog Partners, LP v. CURO Group Holdings Corp.*,
     426 F. Supp. 3d 864, 870 (D. Kan. 2019) ...................6

## STATUTES

15 U.S.C. § 78u-5(c)(1).......................................12

## OTHER AUTHORITIES

Investopedia, *Near-term*,
     https://www.investopedia.com/terms/n/nearterm.asp..........4

**PRELIMINARY STATEMENT**

Plaintiff's Brief ("PB") unwittingly confirms that this is an improper case of "fraud by hindsight."  Bereft of a single document, confidential witness, or motive for the purported fraud — and conceding that Defendants accurately reported every metric of the business — Plaintiff relies only on Realogy's later stock price decline and post-Class Period statements.  As explained below, those are insufficient to survive dismissal.

*First*, Plaintiff identifies no facts specifying why Defendants' statements were purportedly false when made.  Indeed, Plaintiff claims it need not even explain why Defendants' statements regarding ABCR were false, while also resorting to manufacturing statements that Defendants never said.  *See infra*, 8-9.  Plaintiff likewise fails to meaningfully argue against the application of the safe-harbor, puffery, and opinion doctrines, which protect most challenged statements.

*Second,* despite devoting over nine pages to the issue, Plaintiff does not identify a single fact presented to any Individual Defendant to substantiate the AC's conclusory allegations of scienter.  Instead, Plaintiff repeats the truism that its allegations must be viewed "holistically," but a host of generic allegations cannot add up to the requisite specificity.  Indeed, the Third Circuit has rejected materially indistinguishable allegations as insufficient.  *See In re Hertz*

1

*Glob. Holdings Inc.*, 905 F.3d 106, 115 (3d Cir. 2018).

*Third*, Plaintiff confirms that it relies on the disclosure of disappointing results and an uncertain DOJ investigation as corrective disclosures. But even the cases upon which Plaintiff relies hold those types of allegations are legally insufficient.

*Fourth*, Plaintiff's "commission split" claim is time-barred. A reasonably diligent plaintiff would have discovered the claim on November 3, 2017, and the claim has nothing to do with the ABCR claim, which was the only claim pleaded in the original Complaint ("OC").

Accordingly, the AC ought to be dismissed in its entirety with prejudice.

## ARGUMENT

## I. PLAINTIFF FAILS TO ALLEGE ANY ACTIONABLE MISSTATEMENT

### A. No Statement Has Been Shown to be False When Made

The PSLRA requires Plaintiff to "demonstrate with sufficient particularity ... 'the reason or reasons why'" Defendants' statements were false or misleading when made. *Nat'l Junior Baseball League v. Pharmanet Dev. Grp.*, 720 F. Supp. 2d 517, 537 (D.N.J. 2010). Plaintiff fails to satisfy this standard and is wholly unable to identify any specific facts contradicting the challenged statements when made. *See In re Incyte*, No. 13-CV-365 (JRS), 2014 WL 707207, at *10 (D. Del. Feb. 21, 2014).

2

**Commission Splits**: Plaintiff argues that Defendants misrepresented that: (i) "the [commission split] initiative could successfully attract and retain agents ... and increase Realogy's profitability"; (ii) "any negative impact from rising splits would be 'near-term,'" and "substantially moderate"; and (iii) such initiative would not impact Realogy's ability to meet its 2017 commission split guidance or FY18 operating EBITDA guidance.  (PB at 12-13.)  Each of those arguments fail.

First, it is demonstrably true that the commission split initiative led to "historic[]" agent recruitment and retention rates, as predicted.  (Defs.' Brief ("DB") at 9-10.)  Second, Defendants never said that "any" negative impact from the increases would be limited to the "near-term" (*id.* at 18) as Plaintiff belatedly concedes.  (PB at 15 & 13 n.6.)  Third, Realogy's commission splits did "substantially moderate" in 2018, as Defendants had projected (DB at 10, 11), and Plaintiff now implicitly concedes those statements were "accurate."  (PB at 15.)  Fourth, Defendants did not state that their guidance on commission splits and EBITDA was immune from rising commission splits.  Instead, they "always said ... there's going to be pressure on splits" (DB, Ex. E at 9), and that its performance could suffer as a result.  (*Id.* Ex. O at 3.)[1]

---

[1]  Plaintiff conjures a straw-man to argue that "Defendants interject an improper factual dispute as to whether investors

3

Perhaps in recognition of the accuracy of Defendants' statements, Plaintiff pivots to arguing that "[w]hile commission splits may have 'moderate[d],'" the statements were "misleading because they failed to disclose that despite the moderation, splits still needed to increase substantially" to track the market.  (PB at 15.)  But Plaintiff ignores that Defendants told investors that "there will still be upward pressure on agent commission rates" after they moderated.  (DB at 10.)  Given this, Plaintiff's run afoul of the controlling guidance of *CALPERS v. Chubb Corp.*, 394 F.3d 126, 140 (3d Cir. 2004), in which the Third Circuit rejected claims that defendants should have disclosed that initiatives were "too small to compensate" for broader market trends because the plaintiffs failed to allege how defendants could accurately predict those trends.[2]

---

understood 'near-term' to mean that the negative impact of rising splits would last 27 months."  (PB at 16.)  Defendants never argued this, and Plaintiff concedes that Realogy's commission splits "moderated" in the near-term.  *In re Incyte*, 2014 WL 707207, at *10.  Instead, Defendants repeated the warning about "near-term" pressure to signal that they could not be certain of the duration.  Investopedia, *Near-term* ("There is no definitive time frame on what the near term is.").

[2]  The only way Plaintiff attempts to distinguish *Chubb* is to assert that Defendants made "continuous reassurances of the time-frame of the negative impact."  (PB at 16, n.11.)  But repeated statements do not make a qualitative difference, as the defendants in *Chubb* also said performance would "moderately" suffer over the short term.  *Chubb* ought to control because there, as here, Plaintiff's claim is "utterly without merit, as ... Defendants fully disclosed before and throughout the

4

Plaintiff here similarly fails to allege that Defendants knew the degree to which the market would continue pushing splits upward after they moderated.

Plaintiff's last-ditch argument, that further disclosures were warranted because the stock price dropped after reporting negative results (PB at 16), is blatant – and impermissible – fraud by hindsight. *Chubb*, 394 F.3d at 158; *In re Travelzoo Inc.*, Nos. 11-CV-5531(GBD), 2013 WL 1287342, at *7 (S.D.N.Y. Mar. 29, 2013) ("Plaintiffs cannot allege fraud simply because ... the decline of stock prices.").[3]

The cases Plaintiff cites are inapposite because the complaints in those cases alleged facts that cast doubt upon the truth of defendants' statements when made.  Plaintiff's reliance upon *In re Merck & Co., Inc.*, Nos. 05-CV-1151 (SRC), 2011 WL 3444199 (D.N.J. Aug. 8, 2011), is particularly demonstrative. There, this Court held that the plaintiffs' allegations were sufficient because the defendants' "positive statements" about a drug were "strongly" undermined by their possession of

---

Class Period that the initiative was expected to and was indeed causing the loss of profitable business."  394 F.3d at 156.

[3] Plaintiff relies upon *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. 13-CV-6731, 2015 WL 3755218 (E.D. Pa. June 16, 2015), to argue it is not pleading fraud by hindsight, but that court rejected precisely what Plaintiff attempts to do. *Id.* at *14 ("An 'attempt to impose liability on management for unrealized economic predictions'" is "not a permissible basis for liability under the securities laws.") (citation omitted).

undisclosed studies.[4]  *Id.* at *1.  Instead of identifying facts that "strongly" undermine Defendants' statements, Plaintiff here identifies no contrary facts within Defendants' possession at the time they spoke.

**Technology**: Plaintiff fails to specify any facts demonstrating that Realogy's technology was too "antiquated" to "counteract competition."  (PB at 17.)  Plaintiff claims it has pleaded "numerous" such facts, but then offers the Court elusive string cites that lead only to allegations that Defendants had invested in technology (AC ¶¶ 64-71), or naked conclusions that Realogy's "technology and data were antiquated." (*Id.* ¶¶ 181(a), 192(a), 207(a), 218(a), 233(a).)

Bereft of particularized facts, Plaintiff invokes more fraud by hindsight by relying on Schneider's statements that the Company was "flat" on agent growth and a post-Class Period comparison of "Realogy's offerings to an outdated 'diesel engine.'"  (PB at 18.)  But even setting aside that post-Class Period statements say nothing about whether the challenged statements were false when made, Plaintiff ignores that

---

[4]  *Accord In re Valeant Pharm. Int'l, Inc.*, No. 15-CV-7658 (MAS), 2017 WL 1658822, at *3 (D.N.J. Apr. 28, 2017) (defendants invented fake programs and denied those deceptive practices); *Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*, 426 F. Supp. 3d 864, 870 (D. Kan. 2019) (holding statements actionable because defendants allegedly omitted "specific facts" about the company's strategy and timing on its business transition).

6

Realogy's initiatives led to "historic[]" recruiting successes and that Schneider <u>never</u> compared Realogy's technology to a diesel engine, let alone an outdated one.  (DB at 43.)

**Acquisitions**: Plaintiff similarly argues that it has sufficiently pled why Defendants' statements that acquisitions were "efficiently incorporated into Realogy's existing infrastructure" (PB at 18) were false by referring only to (i) generic allegations that unspecified acquisitions were "inefficient" (AC ¶¶ 72-74, 97, 110(d), 124(e), 141(f), 166(e), 181(f), 207(d)) and (ii) post-Class Period statements. (PB at 18-19).  But because conclusory statements are plainly insufficient to satisfy the PSLRA, and post-Class Period statements say nothing about the falsity of statements when made, this claim should be dismissed.

**ABCR**: Plaintiff does not dispute that it failed to plead that Defendants were engaged in undisclosed anticompetitive activity in conformity with *In re Insurance Brokerage*, 618 F.3d 300, 315 (3d Cir. 2010), and the PSLRA.  Instead, Plaintiff argues it need not plead why the ABCR statements were false, because whether Realogy's "coordinat[ion] with other large brokerages" to inflate the ABCR was "'illegal' is irrelevant." (PB at 20.)  However, that is pure sophistry because neither Defendants' argument, nor the PSLRA, turns on whether the undisclosed conduct was "illegal."  Rather, the "clear language"

7

of the PSLRA "requires that the underlying facts" that the defendants should have disclosed "be pleaded with particularity." *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 463 (2d Cir. 2019). And where, as here, those "underlying facts" are alleged "anticompetitive" activities (PB at 19-20), Plaintiff's claim "is entirely dependent" on pleading "particularized facts about th[ose] underlying" anticompetitive activities. *Gamm*, 944 F.3d at 463.[5] Because Plaintiff pleads "anticompetitive" conduct only in the vaguest terms (*e.g.*, AC ¶ 300), its claim should be dismissed.[6]

*            *            *

Apparently seeking to amend their Amended Complaint with new allegations in their Answering Brief, Plaintiff invents even more meritless mischaracterizations and claims, including:

---

[5] *In re Henry Schein, Inc.*, No. 18-CV-01428 (MKB), 2019 WL 8638851, at *10 (E.D.N.Y. Sept. 27, 2019), offers Plaintiff no support because, there, plaintiff pleaded the anticompetitive conduct with the requisite specificity, including by referencing communications between competitors. Nor do *Valeant* or *Steiner v. MedQuist Inc.*, No. 04-CV-5487 (JBS), 2006 WL 2827740 (D.N.J. Sept. 29, 2006), as neither involved undisclosed anticompetitive activity.

[6] The denials of the motions to dismiss the antitrust claims in *Sitzer v. National Ass'n of Realtors* (PB at 21 n.16), and *Moehrl v. National Ass'n of Realtors*, No. 19-CV-01610, 2020 WL 5878016 (N.D. Ill. Oct. 2, 2020), do not render Plaintiff's securities fraud claim adequately pleaded. Whether an antitrust claim passes muster under FRCP Rule 8 says nothing about whether it passes muster under the PSLRA. *Gamm*, 944 F.3d at 466 (affirming dismissal of securities claim premised on alleged anticompetitive conduct where a district court denied motion to dismiss antitrust claim).

- "Attracting agents was, unbeknownst to investors, no easy, task" (PB at 4), but <u>Defendants told investors how difficult this is.</u> (*E.g.*, Ex. A at 2.)

- "Realogy's acquisition strategy ... as admitted by non-defendant CFO Simonelli and Schneider, saddled Realogy with unprofitable acquisitions" (PB at 6), but Defendants never made such "admissions."

- "Defendants ... failed to disclose that Realogy's below-market commissions strategy" forced it catch up (PB at 4), but Defendants disclosed that they had held commission rates steady for the three years preceding the Class Period and they planned to "catch up." (Ex. B at 8, 10.)

- "[I]t took Realogy over two years to counteract competition"(PB at 5), but Plaintiff tacitly concedes that Schneider's statement that Realogy was done "playing catch up" was accurate. (*Id.* at 8.)

- Defendants "misrepresent[ed] that Realogy's commission split adjustments would <u>only</u> impact 'near-term' profitability" (PB at 1-2 (emphasis added)), but Defendants never said these impacts would be limited "only" to the near term. (*See id.*)

- "Simonelli and Schneider confessed that Realogy's technology offerings were still outdated" (*id.* at 21), but the allegations Plaintiff cites do not contain statements from Simonelli relating to technology and Schneider announced a plan to invest "more" in technology and said nothing about past investments. (*See* DB at 48.)[7]

---

[7] Although Plaintiff separately contends that Defendants had a duty under Rule 10b-5 to disclose, Plaintiff has failed to identify any facts that should have been disclosed, particularly given Defendants' meaningful cautionary statements. And the other duty Plaintiff contends warranted further disclosure — Item 303 — is inapplicable because Plaintiff does not rebut the Third Circuit's clear command that Item 303 does not "impose[] an affirmative duty of disclosure ... that could give rise to a claim under Rule 10b-5." *Oran v. Stafford*, 226 F.3d 275, 286 n.6 (3d Cir. 2000).

**B.    Most Challenged Statements Are Forward-Looking**

Plaintiff does not dispute that most of the statements identified by Defendants "plainly discuss future performance[.]" *In re Hertz Glob. Holdings, Inc.*, No. 13-CV-7050 (MCA), 2017 WL 1536223, at *13 (D.N.J. Apr. 27, 2017). Indeed, Defendants identified over 70 statements concerning commission splits, acquisitions, and technology that are protected by the PSLRA's safe harbor because they were plainly forecasts about future performance. (*See* DB at 25-28.) Those statements include: "the current estimate for 2017 is that splits will ... put near-term pressure on NRT's margins" and that "we expect to benefit ... [from] improving agent productivity from new data and technology." (*Id.* at 25, 28.)

Plaintiff's arguments to the contrary do nothing to preclude the application of the safe harbor. First, Plaintiff's argument that the safe harbor is unavailable because some of Defendants' forecasts included "then-present factual conditions" (PB at 29) fails because projections based on present facts are still forward-looking if they are used to forecast future performance. *See Baseball*, 720 F. Supp. 2d at 533 ("[W]hile Defendants' statements are based on underlying historical facts, the statements are nevertheless forward-looking."). Thus, each of the five statements Plaintiff challenges, *e.g.*, "we see no reason to think [commission split guidance] is any higher" are

10

forward-looking.  *See id.* ("We are increasing non-GAAP guidance ... based on both our year-to-date performance ... this ... reflects our confidence" protected by the safe harbor).[8]

Second, Plaintiff's arguments that Defendants omitted material facts regarding the "long-term, negative impact of Realogy's rising commissions initiative" and had actual knowledge of falsity (PB at 31) ought to be rejected because Plaintiff has failed utterly to identify any "existing material facts" that rendered Defendants' statements false when made. And without any allegations demonstrating that Defendants had information contrary to their statements, Plaintiff is well short from pleading that any Defendant had specific "actual knowledge" of these statements' falsity.

Lastly, Plaintiff does not contest that Realogy's risk factors were meaningful, but instead argues that they were undone because: (i) Defendants repeated the phrase "near-term"; (ii) Defendants did not update them as the risks supposedly "materialized"; and (iii) there purportedly were "dramatic stock price declines."  (PB at 33-34 & n.34.)  But those arguments were soundly rejected by the Third Circuit in *Inst. Investors*

---

[8]  Plaintiff's cases stand for the uncontroversial proposition that facts within a forward-looking statement are not protected as forward looking if plaintiffs challenge the fact and not the projection.  Those are inapplicable here because Plaintiff claims that the forward-looking projections themselves are false.

11

*Grp. v. Avaya, Inc.*, 564 F.3d 242, 256 n.23, 58 (3d Cir. 2009): (1)defendants' alleged "repeat assurances" to investors could not undo meaningful disclosures; (2) cautionary language cannot be overcome by supposed materializations of those risks where, as here, plaintiff had failed to plead defendants "knew" those risks materialized; and (3) "the very fact that [the] share price dropped precipitously" is immaterial.[9]

## C.   Many Statements Are Sincerely Held Opinions

Plaintiff offers no meaningful response to Defendants' demonstration that 41 statements relating to commission splits, technology, and acquisitions are nonactionable opinions, including those beginning with "we believe" and "I think." (DB at 32.)  For instance, Plaintiff failed to demonstrate that Defendants did not hold these beliefs or that the supporting facts underlying them were inaccurate as required by *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015).  (DB at 32-33.)[10]

---

[9]  Even if Plaintiff had actually identified facts that Defendants should have disclosed, the PSLRA's plain text refutes Plaintiff's argument that the PSLRA is inapplicable to such statements.  The safe harbor applies when either of its requirements are met.  *See* 15 U.S.C. § 78u-5(c)(1); *Harris v. Ivax Corp.*, 182 F.3d 799, 806 (11th Cir. 1999) ("[T]here is no question under the statute that a material and misleading omission can fall within the forward-looking safe harbor.").

[10]  As explained throughout this brief, Plaintiff has not identified any "'particular [and material] facts going to the basis for the issuer's opinion'" that contradict or undermine Defendants' statements.  (*See infra* p. 14-16.)

12

Instead, Plaintiff baldly claims that these statements are "'neither forward-looking nor estimative,' but speak to a present state of affairs." (PB at 35.) However, statements such as "we believe" that Realogy's future commission split projections were accurate are plainly opinions estimating future results. *See In re Aratana Therapeutics Inc.*, 315 F. Supp. 3d 737, 758 (S.D.N.Y. 2018) ("[w]e believe we have or will have sufficient supply of formulated drugs to meet our commercial forecast" were statements of opinion).

### D.   Many Statements Are Inactionable Puffery

Defendants identified at least 12 plainly immaterial statements of puffery, including that "Realogy was better 'positioned to weather' market shifts than its competitors," and cited extensive case law dismissing analogous claims. (DB at 34.) Without addressing most of these statements or legal authorities, Plaintiff contends that puffery is: (i) "an issue left to the factfinder," (ii) inapplicable because the statements related to "critical" aspects of Realogy's business, and (iii) unavailable because the puffing statements were "undermined by then-known undisclosed facts." (PB at 26, 28.) To begin, the Third Circuit has held repeatedly that dismissal is appropriate on puffery grounds. *See In re Advanta Corp.*, 180 F.3d 525, 538 (3d Cir. 1999). Second, that the puffing relates to an "important" part of Realogy's business is mostly

13

irrelevant; the test is whether the statement is too "vague" for a reasonable investor to have relied on it. *See In re Aetna, Inc.*, 617 F.3d 272, 284 (3d Cir. 2010).[11]  And Plaintiff never identifies — and the AC does not contain — contradictory non-disclosed facts that it claims "undermined" Defendants' commission split statements.  (PB at 28.)[12]

## II.  THE COMPLAINT FAILS TO ALLEGE SCIENTER

As this Court has explained, where, as here, "motive is not apparent" the strength of Plaintiff's circumstantial allegations of conscious or reckless misbehavior must be "correspondingly greater."  *In re Bristol-Myers Squibb*, No. 00-CV-1990 (SRC), 2005 WL 2007004, at *28 (D.N.J. Aug. 17, 2005).  The Answering Brief confirms that Plaintiff has failed to plead motive and cannot meet its "greater" burden.  Indeed, Plaintiff relies on

---

[11]  Cases cited by Plaintiff are not to the contrary.  *Emp. Ret. Sys. Puerto Rico Elec. Power Auth. v. Conduent Inc.*, No. 19-CV-8237 (SDW)(SCM), 2020 WL 3026536, at *5 (D.N.J. June 5, 2020), did not even address puffery.  And, unlike here, in *In re Vivendi Universal, S.A.*, 765 F. Supp. 2d 512, 573 (S.D.N.Y. 2011), the court held that "statements regarding Vivendi's 'sound financial footing,'" were not puffery because they were "supported by specific statements of fact."

[12]  Plaintiff has cited no authority that would transform unquantifiable statements (*e.g.*, "enhancing our value proposition for agents" and acquisitions were "reduc[ing] or eliminat[ing] duplicative costs") into actionable statements merely based upon later general results (*e.g.*, flat agent counts for one quarter and that certain acquisitions created "inefficiencies").  (PB at 27.)  Plaintiff ignores that Realogy saw "historic[]" recruiting gains and that reducing duplication can be consistent with some remaining inefficiencies.

14

no confidential witnesses or any internal document, and fails to identify facts conveyed to Defendants contradicting their statements.  Plaintiff retreats to the frequent refrain that its allegations must be viewed "holistically" (PB at 38), but, as explained below, generic allegations do not meet the requisite specificity to plead conscious misbehavior or recklessness.

Plaintiff principally relies upon the core operations doctrine, Individual Defendants' positions as executives, a few executives' departures following the report of negative performance, and post-Class Period statements.  (PB at 39-43.) But even the cases on which Plaintiff relies demonstrate that is not enough.[13]  *See In re Navient Corp.*, No. 17-CV-8373 (RBK), 2019 WL 7288881, at *10 (D.N.J. Dec. 30, 2019) (complaint alleged "scienter by drawing on ... confidential witness[es] ... and motive allegations.").[14]  Indeed, the Third Circuit has

---

[13]  In fact, Plaintiff cites *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 37 (S.D.N.Y. 2019), which expressly rejected the thrust of Plaintiff's scienter allegations: "'bare assertions [that defendants, due to their high-level positions in the Company, had access to adverse undisclosed financial information ... ]' will not be suffice to create a strong inference of scienter."

[14]  Plaintiff's other cases are similarly distinguishable. *See In re Bradley Pharm., Inc.*, 421 F. Supp. 2d 822, 830 (D.N.J. 2006)("The Complaint also alleges ... each of the Individual Defendants knew facts and had access to specific information suggesting that their public statements ... were not accurate."); *In re ViroPharma Inc.*, 21 F. Supp. 3d 458, 473-74 (E.D. Pa. 2014) (holding plaintiff pleaded scienter through allegations of motive and several confidential witnesses).

15

rejected similar (but even more robust) allegations.  *See Hertz*, 905 F.3d at 115 (rejecting "(1) the size and scope of the Restatement, (2) Hertz's admission of material weaknesses in its internal controls, (3) signed SOX certifications accompanying materially false SEC filings, (4) Hertz's replacement of upper management, and (5) insider trading activity....").[15]

Plaintiff's scattershot arguments fare no better. First, Plaintiff claims Defendants "closely monitored" Realogy's business, but absent allegations of specific facts that Defendants learned contradicting their statements before they made them, those allegations are no different than the failed attempts to premise scienter on Defendants' executive positions. *See, e.g., Avaya*, 564 F.3d at 270 (management's general awareness of the company's business is insufficient "absent some additional allegation of specific information conveyed to management and related to the fraud").

Second, Defendants did not, as Plaintiff contends, "den[y]" analysts' questions about whether commission splits could rise further.  (PB at 41-42.)  Instead, responding to a question about whether commission split guidance had incorporated market

_____

[15]  Plaintiff claims that Defendants "inappropriately raise factual questions" about the timing of executive departures but the documents the AC relies upon demonstrate that Smith was replaced as CEO pursuant to a transition plan and that Hull remained on as a senior advisor to Realogy.  (DB at 5-6.)

16

data, Hull simply said his view was that Realogy's guidance was "pretty much right-sized," but that there would be "a little bit" more pressure.  (DB, Ex. C at 11.)  The cases on which Plaintiff relies *Avaya,* 564 F.3d at 270, are inapposite because, unlike here, the executives there "flatly denied" questions even though confidential witnesses showed those denials were false. *Accord In re Enzymotec*, No. 14-CV-5556 (JLL), 2015 WL 8784065, at *5 (D.N.J. Dec. 15, 2016).

Third, Plaintiff relies upon post-Class Period statements, but they say nothing about Defendants' state of mind during the Class Period apart from Plaintiff's distortion.  (*See* DB at 46.)

Fourth, Plaintiff argues that an unspecified antitrust "investigation" by the DOJ supports scienter (PB at 44), but even the case on which Plaintiff relies, *Utesch v. Lannett Co.*, 385 F. Supp. 3d 408, 423 (E.D. Pa. 2019), demonstrates that is insufficient because *Utesch* involved "criminal charges" and a "conviction."  *Cf. Teamsters Local 456 Pension Fund v. Univ. Health Servs.*, 396 F. Supp. 3d 413, 469 (E.D. Pa. 2019) ("[I]t is well-established that an investigation that has not resulted in charges ... does not support an inference of scienter.").[16]

---

[16]  Nor does *Epstein v. World Acceptance Corp.*, 203 F. Supp. 3d 655, 668 (D.S.C. 2016), provide support because, unlike here, the defendants routinely cast doubt on the investigation.

17

Fifth, Plaintiff's contention that the "magnitude" of Realogy's negative performance creates an inference of scienter (PB at 44-45) is just more fraud by hindsight that the Court ought to reject.[17]  Because the sum of all of Plaintiff's allegations fails to amount to an inference of scienter, Plaintiff's claim should be dismissed.

Moreover, Plaintiff does not dispute that specific facts show Defendants acted in good faith, including that: Realogy reported record agent recruitment rates, voluntarily revised commission guidance downward twice, and gave updates on these initiatives every quarter.  (DB at 47-48.)  Plaintiff claims that foregoing is "belied" by the AC, but Plaintiff does not specify any allegations "bel[ying]" Defendants' statements.

## III. PLAINTIFF FAILS TO PLEAD LOSS CAUSATION

Despite Plaintiff's claim to the contrary (PB at 49), Courts routinely dismiss claims where "Plaintiff improperly relies on negative financial results after each of the quarterly public disclosures...." *Baseball*, 720 F. Supp. 2d at 561; *see also Martin v. GNC Holdings, Inc.*, No. 15-CV-01522 (MRH), 2017 WL 3974002, at *18 (W.D. Pa. Sept. 8, 2017)("[T]he

---

[17]  Plaintiff's attempt to capitalize on Individual Defendants' certification of Sarbanes-Oxley filings fails because it "does not add to the scienter puzzle in the absence of any allegation that the defendant knew he was signing a false SEC filing."  *Hertz*, 905 F.3d at 118.

18

announcement of an investigation ... is insufficient to establish loss causation."). Plaintiff's cited cases only demonstrate the AC's inadequacies: unlike here, the companies there revealed previously hidden information.[18]

## IV.   THE COMMISSION SPLIT CLAIM IS TIME-BARRED

Plaintiff's commission split claim is time-barred because Plaintiff failed to bring it until two-and-a-half years after Realogy supposedly "shocked" the market with disappointing results, allegedly due to commission split increases. Indeed, Plaintiff impermissibly attempts to have it both ways by claiming that Realogy's November 3, 2017, announcement of negative results was so significant that it suffices as a corrective disclosure (PB at 47), but somehow did not start the running of the statute of limitations. *See Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412, 416 (2d Cir. 2011) (holding that the corrective disclosure date is the same as the constructive notice date). While Plaintiff claims it needed further information, Defendants' later announcements only revealed more of the same — i.e., Defendants' negative financial results.

---

[18]   *See In re Urban Outfitters*, 103 F. Supp. 3d 635, 656 (E.D. Pa. 2015) (disclosing lagging sales); *In re Bradley Pharm., Inc.*, 421 F. Supp. 2d at 828 ("'[T]he 26% decline in Bradley's stock price at the end of the Class Period was a direct result of the revelation to the market.'").

Nor can the relation back doctrine save Plaintiff's untimely claim.  Plaintiff claims that the AC merely "restat[ed]" or "amplif[ied]" the ABCR claim, but there is not even a whiff of the commission splits claim in the OC, which pleaded exclusively the ABCR claim.

## V.    THE SECTION 20(A) CLAIM SHOULD BE DISMISSED

Because Plaintiff has not alleged a primary violation of Section 10(b), its Section 20(a) claim therefore also fails.

## VI.    THE REQUEST FOR LEAVE SHOULD BE DENIED

Plaintiff's request for leave should be denied because it "request[s] leave to amend in a footnote wherein [it] fail[s] to explain the basis for this request or offer how [it] would cure the defects."  *In re Interpool, Inc.*, No. 04-CV-321 (SRC), 2005 WL 2000237, at *19 (D.N.J. Aug. 17, 2005) (Chesler, J.).

## CONCLUSION

For the foregoing reasons, the motion should be granted in all respects.

Dated: November 2, 2020

Respectfully submitted,

/s/ James W. Brown
Susan L. Saltzstein (*pro hac vice*)
James W. Brown
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Phone:   (212) 735-3000
Fax:     (212) 735-2000

*Attorneys for Defendants*

20

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of November, 2020, I electronically filed the foregoing with the Clerk of Court through the CM/ECF system which will send a notice of electronic filing to all persons electronically noticed.

*/s/ James W. Brown*